# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AMOS E. MASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-cv-890-JPG-PMF |
| ) | |
| VIRGIL SMITH, et al., ) | |
| ) | |
| Defendants. ) | |

## **REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court is defendants' motion for summary judgment (Doc. No. 32). The motion is opposed (Doc. No. 41). A reply is on file (Doc. No. 42). An evidentiary hearing was held on February 7, 2012.

Plaintiff Amos Mason is proceeding on a civil rights claim brought under 42 U.S.C. § 1983. He filed suit on November 5, 2010, challenging the conditions of his former confinement at Menard Correctional Center. Specifically, Mason claims that defendants Virgil Smith and George Holton failed to take reasonable steps to protect him from harm inflicted by inmate Pratt on February 21, 2010. The defendants seek a ruling in their favor on their affirmative defense of failure to exhaust administrative remedies. The Court must resolve this defense before the merits of Mason's civil rights claim may be addressed. *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

Mason's suit is subject to the Prison Litigation Reform Act, which provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Court of Appeals requires strict compliance with the statute. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion means the prisoner has abided by the procedures for pursing relief. That is, he must file complaints and appeals "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Failure to exhaust administrative remedies is an affirmative defense; the defendants bear the burden of proof. *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008).

In Illinois, the grievance process usually includes five levels of review. A prisoner first submits his grievance to a counselor. He may then submit a formal grievance to the grievance officer. The warden makes the final decision at the institutional level. A prisoner who is not satisfied by the warden's response may appeal to the Director. Those appeals are handled initially by the administrative review board (ARB). The Director issues the final decision. 20 Ill. Admin. Code § 504.810 et seq.

In some circumstances, administrative remedies may not be "available" to the prisoner. For example, a procedure is not available if prison officials interfere or refuse to provide the forms needed to initiate or complete the procedure. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). The "availability" of a remedy is not what appears to be on paper, but whether the process was in reality open for use. *Kaba v. Stepp*, 458 F.3d. 678, 684 (7th Cir. 2006).

The defendants take the position that Mason failed to comply with a number of procedural rules governing grievances and appeals. They suggest that Mason skipped the initial steps and attempted to start the grievance process in November and December, 2010, by sending grievance

forms to the ARB. Mason counters with evidence that he took all steps required of him on several occasions. He claims he was unable to complete any of the required procedural steps because he did not receive a response from his counselor, a grievance officer, or the warden. The testimony and documents are summarized below.

**(1).   Assault**

Mason testified that he was injured when his cell-mate physically assaulted him on February 21, 2010. At the time, Mason was housed at Menard Correctional Center. He was familiar with the prison's grievance procedure.

**(2).   Informal Grievance**

Mason testified that the same day of the assault or the following day, he prepared a written grievance regarding his failure to protect claim. He addressed the grievance to Mr. Ryan, a correctional counselor, and placed the grievance in the institutional mail. Mason testified that he retained a copy of the grievance, which is on file (Doc. Nos. 41-1, pp. 6-13). Mason testified that he spoke with Mr. Ryan on March 22, 2010, and asked if he could press charges against another inmate. He also inquired about the status of his grievance, and learned that Ryan had not received it.

Mason testified that he prepared additional grievances about May 15 and August 25, 2010 (Doc. No. 41-1, pp. 10-13). He testified that he sent these grievances to Mr. Ryan through institutional mail.

The defense presented a document known as a cumulative counseling summary or "CCS." This document shows that Mr. Ryan made entries between February and October, 2010, describing his interactions with Mason (Doc. No. 42-1, p. 1-2). The CCS does not indicate that Ryan received

any of Mason's grievance forms or that Ryan discussed with Mason the status of an outstanding grievance. A note on the CCS corresponds with Mason's testimony that he asked Ryan about his ability to press assault charges against another inmate (Doc. No. 42-1, p. 5).

### (3). Emergency Grievance

Mason testified that he prepared an other grievance on February 21 or 22, 2010. He said he addressed this grievance to the warden and placed the grievance in the institutional mail. The grievance sought emergency consideration.

### (4). Formal Grievance

Mason testified that he prepared another grievance on February 22, 2010. He said that he sent this grievance to the grievance office. He also testified that he prepared another grievance and sent it to the grievance office on about May 15, 2010, and prepared another grievance and set it to the grievance office on about August 25, 2010 (Doc. No. 41-1, pp. 3-4).

The defense counters with the affidavit of Tracy Gruber-Harrington. Gruber-Harrington is a grievance officer at Menard Correctional Center. She explains that the office maintains a log listing the inmates who have submitted grievances. The log shows that only two grievances were received from Mason in 2010. Those grievances were received on November 24 and November 30, 2010 (Doc. No. 42-1, pp. 9-10). It does not appear that either of the grievance forms received by the Menard grievance office pertain to the injury Mason suffered on February 21, 2010.

### (5). Litigation

Mason filed this civil rights suit against Smith and Holton on November 5, 2010 (Doc. No. 1).

### (6). Appeal to Administrative Review Board

Documents submitted by Mason suggest that he prepared additional grievances on November 27 and December 9, 2010. These forms were received by the ARB (Doc. No. 33-1, pp. 6-8). Jackie Miller, Chairperson for the ARB, reviewed these forms and returned them to Mason on January 12, 2011. The forms were returned because they were not submitted within the time-frame outlined in department rules. A final determination by the ARB was not made (Doc. No. 33-1, pp. 3-4).

On June 6, 2011, the ARB received another grievance, post-dated to June 7, 2011. This grievance was reviewed and was also returned to Mason without a final determination (Doc. No. 33-1, p. 4, 10).

### (7). Responses

Mason testified that he did not receive grievance responses from Mr. Ryan, the warden, or a grievance officer (Doc. No. 41-1, p. 4).

---

Upon consideration of all the evidence, the weight of the persuasive evidence satisfies defendants' burden of proof. During the relevant period, Mason understood the grievance process, had access to grievance forms, and met with Mr. Ryan, a correctional counselor, on a fairly regular basis. Mason made a effort to obtain an administrative remedy regarding his failure to protect claim, using the institutional mail system. There is little reason to conclude that Mr. Ryan actually received Mason's grievance and refused to respond. The only evidence on this point is Mason's testimony that he spoke with Mr. Ryan on March 22, 2010, and learned that Mr. Ryan had not received his grievance. The evidence does not reasonably permit the inference that Mr. Ryan received and mishandled Mason's grievance. Similarly, there is no persuasive evidence showing that the warden

or a grievance officer received and mishandled Mason's grievance. Mason's testimony, if believed, suggests that approximately seven grievances were sent to various prison officials at Menard and that all of those grievance forms were ignored, lost, or mishandled. That scenario does not match up with the records kept by the correctional counselors and grievance officers at Menard and is not particularly believable.

The evidence, viewed as a whole supports the affirmative defense, showing that Mason did not complete the administrative remedy process. The persuasive evidence does not support a finding that the administrative remedy process was not available to Mason during the months following the February, 2010, assault. In other words, the preponderance of the credible evidence supports a finding that Mason did not exhaust his available administrative remedies before he filed this suit on November 5, 2010.

IT IS RECOMMENDED that defendants' motion (Doc. No. 32) be GRANTED as follows. This action should be dismissed for failure to exhaust available administrative remedies. The dismissal should be without prejudice to another action, if appropriate, after all administrative remedies have been exhausted. *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005).

SUBMITTED:   February 9, 2012   .

   S/Philip M. Frazier
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**